**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| DI ANGELO PUBLICATIONS, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. _____ |
| § | **JURY TRIAL DEMANDED** |
| JENTRY KELLEY § | |
| § | |
| Defendant. § | |
| § | |

**COMPLAINT FOR DECLARATORY JUDGMENT
OF AUTHORSHIP AND COPYRIGHTS**

Plaintiff, Di Angelo Publications, Inc. ("Di Angelo Publications") files this Complaint against Defendant, Jentry Kelley ("Kelley"), alleging as follows:

**THE PARTIES**

1. Di Angelo Publications is a Texas corporation, with its principal office in Houston, Texas, which is within the Southern District of Texas, Houston Division. Di Angelo Publications is, and was at all times herein mentioned, qualified to do business in Texas. Di Angelo Publications is a book publishing firm.

2. Kelley is an individual residing and doing business in Houston, or Harris County, Texas, with an address where she may be served at 1907 Southwest Freeway Service Road, Houston, Texas 77098. Kelley is engaged in the business of selling cosmetics, which she advertises and sells within the jurisdiction of this Court.

1

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court because this litigation arises under federal law, namely 17 U.S.C. § 101 et seq, and particularly § 102(a) (Copyright Act). The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (copyrights), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

4. This Court has personal jurisdiction over Kelley because Kelley conducts business in the state of Texas and within this District and Division, including contracts with Texas corporations and the advertising and sale of her products to Texas residents. Also, a substantial part of the events giving rise to the acts in issue herein occurred in this District.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c).

6. An actual case or controversy has arisen between the parties. Kelley seeks full rescission of a publishing agreement for a book written, illustrated, prepared and published by Di Angelo Publications, ("book") even though that book is complete, so that Kelley, in her view, can print, publish and distribute the book without accounting to Di Angelo Publications. Di Angelo Publications retained printing, publishing, and distribution rights in the book in the publishing agreement and those rights are also protected under copyright law. There is a case or controversy between the parties as to the authorship and the ownership of the copyrights in the book.

## FACTS

7. Di Angelo Publications' principal, Sequoia Schmidt ("Schmidt"), was a personal friend of Kelley for many years. Kelley first approached Schmidt about helping Kelley with publishing a book while they were both visiting a mutual friend. Their friendly conversation led

to a contract ("contract") (Exhibit A), whereunder Di Angelo Publications agreed to prepare and publish a book on behalf of Kelley.

8. Kelley indicated to Di Angelo Publications that the book was to be used by Kelley for marketing the cosmetics that Kelley sold.

9. Kelley provided Di Angelo Publications with three pages (Exhibit B) of ideas or thoughts to begin the book. Thereafter, communicating and/or collaborating with Kelley, Di Angelo Publications wrote the book, planned and illustrated the book, prepared the layout for the book, printed and published the book, and arranged with sellers for selling the book, on line and in brick and mortar stores.

10. Di Angelo Publications planned, took or made, and formatted all of the photographs and illustrations in the book.

11. The book (Exhibit C) is both a literary work and a visual art work but it is predominantly a visual art work because over 50% of it is comprised of photographs and illustrations.

12. The initial print run for the book was 1000 copies, all of which have been sold.

13. At Kelley's request, Di Angelo Publications prepared an "update" or "revised" version or sequel of the book. Di Angelo Publications was about to print and publish that update when Di Angelo Publications learned that Kelley was trying to have the book and/or the update printed herself, to the exclusion of Di Angelo Publications and contrary to the terms of the contract.

14. The contract provided for Di Angelo Publications to retain its rights to print and publish the book unless Kelley elected to buy those rights from Di Angelo Publications, which Kelley has not done.

15. After Di Angelo Publications caught Kelley trying to circumvent Di Angelo Publications' publishing and distribution rights in the book by having the book printed herself, Kelley brought suit in Texas state court, in Harris County, Texas, against Di Angelo Publications. In that state court lawsuit ("state court lawsuit") (Complaint & Answer at Exhibit D), Kelley alleged breach of contract, fraud and deceptive trade practices by Di Angelo Publications for adding a surcharge to Di Angelo Publications' costs in preparing, printing, publishing, and distributing the book.

16. Kelley had agreed in the contract to pay Di Angelo Publication's "expenses" in preparing, printing, publishing, and distributing the book. Kelley alleged in the state court lawsuit that she did not understand those expenses would include a surcharge or mark-up over Di Angelo's actual out-of-pocket costs.

17. The contract does not include a definition of the term "expenses," beyond the context provided by the remainder of the contract and the purpose of the contract, and that term is the focus of the state court lawsuit, in which Kelley has pled claims for unspecified amounts of money damages.

18. The surcharge or mark-up of expenses Di Angelo Publications charged to Kelley was and is typical of mark-ups common among publishers. This surcharge or mark-up is also typical of reimbursable expense surcharges and mark-ups used by other businesses providing services.

19. Di Angelo Publications' surcharge or mark-up added to its actual costs spent on out-of-pocket items for Kelley was to cover Di Angelo Publications' expenses in: locating; negotiating for or ascertaining and comparing price; selecting; ordering or obtaining; receiving; checking; and processing or handling use of the item, be it a service or a goods type of product.

20. Di Angelo Publications' expenses incurred in publishing a book vary from book to book and client to client and sometimes this variance can be substantial. Such costs vary from book to book and client to client depending on the nature of the client's needs, and thus are not fairly treated as general overhead, but rather are more fairly related to the particular book and client with respect to which and for whom Di Angelo Publications incurs the expense. Consequently, in Di Angelo Publications' business model, to be able to offer and provide fair-priced publishing services to a wider range of authors, Di Angelo Publications passes such expenses along to the particular client/author to pay as incurred for their particular book.

21. Di Angelo Publications' surcharge or mark-up in its expenses is not designed or intended to provide Di Angelo Publications a profit and the surcharge or mark-up does not provide Di Angelo Publications a profit.

22. Di Angelo Publications' profits for its publishing services come from a 50% share of net royalties on sales of books published by Di Angelo Publications. The contract provided for Kelley to receive the remaining 50% share of net royalties on sales of the book that Di Angelo Publications prepared, printed, published and distributed for Kelley.

23. Di Angelo Publications calculates net royalties on book sales by determining the amount for which the books are sold less the printing, distribution and publishing expenses associated with the books.

24. Under the contract, Kelley could buyout Di Angelo Publications' rights to its percentage of royalties for book sales. That is, Kelley could negotiate a total amount for Di Angelo Publications to obtain as a profit for the book in lieu of Di Angelo Publications receiving royalties on book sales.

25. Kelley did not buyout Di Angelo Publications' right to its 50% share of net royalties on book sales.

26. Since Kelley has not bought out Di Angelo Publications' right to its 50% share of net royalties on book sales, Di Angelo Publications retained its exclusive right to publish the book and derivative works made from that book, such as revised and updated editions.

27. Di Angelo Publications' exclusive right to publish the book inherently includes an exclusive right to have the book printed for publication and distribution.

28. Di Angelo Publications owns and has not transferred its copyrights in its work on the book and the update to the book—and such work includes writing, editing, planning and taking photographs and having illustrations made, and designing the layout, and related work for preparing the book for publication as a book.

29. Although all of the counts or claims in the state court lawsuit are directed to Kelley's claims for money damages for Di Angelo Publications' adding a surcharge or mark-up to its expenses that Kelley agreed to pay under the contract, Kelley has inexplicably alleged in the state court lawsuit that she owns all rights in the book and its update and "ancillary creations," including "all intellectual property rights," and thus including all copyrights.

30. In Kelley's motion for summary judgment in the state court lawsuit and in two oral arguments before the state court about that motion, Kelley's counsel requested the state court award rescission of the contract as a penalty or consequence of or remedy for Di Angelo Publications' including a surcharge or mark-up in its reimbursable expenses, although Kelley did not include rescission as a requested remedy in the complaint.

31. In response to Kelley's summary judgment motion, the judge in the state court lawsuit did not rule or comment on Kelley's request for rescission of the contract. Rather, the court set Kelley's claims for a March 2020 trial.

32. The federal questions of authorship and copyright ownership of the book and its update should not and are not expected to be decided in the state court lawsuit.

33. The rescission remedy that Kelley seeks in the state court action reflects Kelly's denial of Di Angelo's copyrights in the book.

34. The federal questions of authorship of, and copyright ownership in, the book and its update are in controversy between the parties.

## CLAIMS FOR RELIEF

### CLAIM ONE
(Declaratory Judgment Of Authorship and Copyright Ownership
of the Book and Its Update/Sequel

35. Di Angelo Publications incorporates by reference the allegations contained in paragraphs 1 through 34, inclusive.

36. Through Di Angelo Publications' efforts in preparing the book for publication, including writing, editing, planning and taking all photographs and making all illustrations, and planning, designing, and arranging the layout of the book, Di Angelo Publications has acquired copyrights in the book.

37. Through Di Angelo Publications' efforts in preparing the update to the book for publication, including writing and editing the update and planning the layout for same, Di Angelo Publications has acquired copyrights in the update to the book.

38. Di Angelo Publications has not transferred or assigned its copyrights in the book or in the update to the book.

39. In an apparent attempt to side skirt Di Angelo Publications' copyrights, Kelley has claimed in a state court lawsuit that she owns all rights in the book and in the update to the book, including copyrights. Kelley has made those assertions when the state court lawsuit is not directed to copyright issues or to authorship issues, but rather is directed to whether Di Angelo Publications wrongly included a surcharge in reimbursable expenses under the contract for preparation and publishing of the book.

40. Kelley is seeking a remedy in that state court lawsuit--rescission of the contract pursuant to which Di Angelo Publications prepared and published the book and prepared its update—which in Kelley's view would give Kelley full control of the book.

41. Kelley's ignoring and denying Di Angelo Publications' copyrights in the book and its update adversely impacts Di Angelo Publications' copyrights in the book and its update.

42. An actual, present, and justiciable controversy has arisen between Di Angelo Publications and Kelly concerning authorship and copyright ownership of the book and its update.

43. Di Angelo Publications seeks declaratory judgment from this Court that Di Angelo Publications owns copyrights in the book and its update and those copyrights include among other rights, the right of Di Angelo Publications to control the printing and distribution of the book and its update, and the right to control use of the book and/or its update for preparation of derivative works based on the book or its update.

**PRAYER FOR RELIEF**

WHEREFORE, Di Angelo Publications respectfully requests that the Court:

44. Enter judgment according to the declaratory relief sought;

45. Award Di Angelo Publications its costs in this action;

46. Enter such other further relief to which Di Angelo Publications may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Di Angelo Publications hereby demands a jury trial on all issues so triable.

Dated:  January 10, 2020                                Respectfully submitted,

/s/*Karen B. Tripp*

Karen B. Tripp
Attorney at Law
Texas State Bar No.:  03420850
Southern Dist. of Texas No. 2345
4265 San Felipe, Suite 1100
Houston, TX  77027
(713) 658-9323 office phone
(713) 968-9888 fax phone
tripp.karen@gmail.com
Attorney in Charge for Plaintiff
**Di Angelo Publications, Inc.**