**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DI ANGELO PUBLICATIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-cv-00115 |
| | § | **JURY TRIAL DEMANDED** |
| JENTRY KELLEY | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFF'S COMBINED MOTION AND SUPPORTING**

**MEMORANDUM (including Summary)**

**FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………ii

SUMMARY………………………………………………………………...1

BACKGROUND…………………………………………………………...2

SUMMARY JUDGMENT STANDARD…………………………………….3

ARGUMENT WITH APPLICABLE FACTS…………………………….….4

The Use of the Term "Author" in the Contract is Not Determinative of
Authorship for Copyright……………………………………………………..5

Di Angelo Collaborated with Kelley on Content of the Book & its Update……….5

Kelley Has Not Corroborated Her Sole Authorship Claim………………………...6

Kelley Misunderstands Authorship For Copyright Purposes……………………..10

Evidence Supports Joint Authorship and Joint Ownership of Copyright…………14

CONCLUSION…………………………………………………………...15

CERTIFICATE OF SERVICE……………………………………………16

EXHIBITS

1.     Jentry Kelley's social media page posting at time of launch of Book

2.     January 30, 2022 Declaration of Sequoia Schmidt, founder and principal of Di Angelo Publications, Inc.

3.     Excerpts from Transcript of January 20, 2022 Deposition of Jentry Kelley, including exhibits 2, 4, 5, and 8 to that deposition

4.     February 27, 2020 Verified statement of Sequoia Schmidt

5.     Declaration of Elizabeth A. Zinn

6.      Declaration of Michael Damante

7.      Declaration of Christopher A. Perez

8.      Di Angelo Productions, Inc.'s Second Set of Requests for Production
        of Documents and  Things to Jentry Kelley and Kelley's Responses

9.      Copy of the Update to the Book in Suit


*All exhibits hereto were prepared by undersigned counsel and are represented to*

*be true and accurate copies of what they purport to be.*

# TABLE OF AUTHORITIES

## Cases

Andrien v. Southern Ocean Chamber of Commerce,
927 F.2d 132 (5th Cir. 1991)……………………………………………..12

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)…………………3, 4

Bobenheimer v. PPG Indus. Inc.
5. F.3d 955 (5th Cir.)……………………………………………………3

Celotex Corp. v. Catrett,
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d  265 (1986)………………...…3

Coleman v. Hous. Indep. Sch. Dist.,
113 F.3d 528 (5th Cir. 1997)…………………………………………..3

Di Angelo Publications, Inc. v. Kelley,
9 F. 5th 256, 2021 U.S. App. LEXIS 24031(5th Cir. 2021)…..……...2, 4, 5, 14

Goodson v. City of Corpus Christi,
202 F.3d 730 (5th Cir. 2000)……………………………………………4

Joe Hand Promotions v. Del-Mar Lanes, Civ. No. H-20-466,
2021 U.S. Dist. LEXIS 165985 (S.D. Tex. May 7, 2021)…………………4

Lakedreams v. Taylor,
932 F.2d 1103 (5th Cir. 1991)……………………………………………12

Little v. Liquid Air Corp.,
37 F.3d 1069 (5th Cir. 1994)……………………………………………4

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)……………………3

Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio,
40 F.3d 698 (5th Cir. 1994)……………………………………………..4

Rushing v. Kan. City S. R.R. Co.,
    185 F.3d 496 (5th Cir. 1999)………………………………………………4

Topalian v. Ehrman,
    954 F.2d 1125 (5th Cir. 1992)……………………………………………..4

Turner v. Baylor Richardson Med. Ctr.,
    476 F.3d 337 (5th Cir. 2007)……………………………………………..4

## Statutes and Rules

17 U.S.C. § 201(a)……………………………………………………………4, 5

Fed. R. Civ. P. 56……………………………………………………...…..............1

Fed. R. Civ. P. 56(a)………………………………………………………..3

Fed. R. Civ. P. 56(c)………………………………………………………..3

## Secondary Resources

Russ VerSteeg, Defining "Author" for Purposes of Copyright,
    45 Amer. Univ. L. Rev. 1323 (1966)
    *https://digitalcommons.wcl.american.edu/cgi/viewcontent.cgi?referer=*
    *&httpsredir=1&article=1447&context=aulr*……………………………..13

Pursuant to Fed. R. Civ. P. 56, Plaintiff, Di Angelo Publications, Inc. ("Di Angelo"), moves this Honorable Court for a summary judgment declaration of joint authorship of Di Angelo with Defendant, Jentry Kelley ("Kelley"), and joint copyright ownership, of a book entitled "Hooker to Looker; a makeup guide for the not so easily offended" (the "Book"), and its update ("Update").[1]

## SUMMARY

Di Angelo seeks a finding by this Court of joint authorship and copyright ownership of the Book and its Update in suit.  Di Angelo provides herewith its evidence through declarations of its collaboration with Kelley on Di Angelo's development and preparation for the Book in suit and its Update for publication. Kelley had no manuscript at all when engaging Di Angelo for the work. Kelley now has a published Book, of which all 1000 initially printed copies have been sold, and an Update to that Book ready to print.

Kelley now claims she did everything herself, but she has produced no objective corroboration of her claim.  This Court is asked to find on summary judgment that Di Angelo and Kelley are joint authors and joint copyright owners of

---

[1]  A copy of the Book is attached at Kelley Deposition Transcript Excerpts at Exhibit 3 at depo exhibit 2 (and at Doc. 35-6).  A copy of the Update is attached as Exhibit 9 (and also to the Amended Complaint at Doc. 51-3 and to the Complaint at Doc. 1-3).  See Verified Statement of Sequoia Schmidt at Exhibit 4, ¶¶ 11-15, explaining the error in mistaking the electronic copy of the Update for the electronic version of the original printed Book in the pleadings.  A motion to correct the pleadings will be forthcoming.

the Book and its Update, as no reasonable juror could find only Kelley to be author.

## <u>BACKGROUND</u>

Di Angelo brought this action seeking a declaration of authorship and original copyright, which the Fifth Circuit has held requires construction of copyright law that is within the exclusive federal jurisdiction. *Di Angelo Publications, Inc. v. Kelley,* Doc. 26; 9 F.4th 256, 2021 U.S. App. LEXIS 24031 (5th Cir. 2021).   The dispute centers on the Book, begun in 2015 and published the following year, and its Update, completed in 2018.  A social media posting by Kelley at the time of launching of the Book is attached as Exhibit 1.  Also see Jan. 30, 2022 Declaration of Sequoia Schmidt, at Exhibit 2, ¶23 & Exh. A thereto; Kelly Deposition Transcript Excerpts at Exhibit 3 at 134:20-137:10 & depo exhibit 8 thereto.

Di Angelo was the creator and publisher of the Book and the creator of the unpublished Update.  Kelley was the named "author."[2]   All 1000 initially printed

---

[2] Di Angelo prepared and published the Book pursuant to the Contract attached hereto at Kelley Depo., Exh. 3 at depo exhibit 4 (and to the amended complaint at Doc. 51-1, and to the original complaint at Doc.1-1).  Kelley previously relied on this Contract in her first motion to dismiss this action. Doc. 12, p.1, ¶ 2. The Fifth Circuit has said that the Contract is not determinative of the issue in the motion at bar.  *See Di Angelo Publications, Inc. v. Kelley,* Doc. 26 at 8-11, 9 F.4th 256, ___, 2021 U.S. Dist. LEXIS *9-12 (5th Cir. 2021).

copies of the Book have been sold and Kelley has prevented publishing of the

completed Update.  Kelley now denies that Di Angelo has any rights in the Book

and its Update.

Di Angelo's amended complaint seeks a declaration of all copyrights in the

Book and its Update, or alternatively joint-authorship and joint-ownership of

copyrights in the Book and its Update.  Doc. 51.  This motion for summary

judgment is directed to that alternative remedy.  Discovery is complete.

## SUMMARY JUDGMENT STANDARD

This Court has recently stated the summary judgment standard as follows:

Summary judgment is proper when "there is no genuine dispute as to any
material fact and the movant is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(a). The Court must view the evidence in a light most
favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d
528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting
the basis for the motion and the elements of the causes of action upon which
the nonmovant will be unable to establish a genuine issue of material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d
265 (1986). The burden then shifts to the nonmovant to come forward with
specific facts showing there is a genuine issue for trial.  *See* Fed. R. Civ. P.
56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-
87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "A dispute about a material
fact is 'genuine' if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." *Bobenheimer v. PPG Indus. Inc.,* 5 F.3d
955, 956 (5th Cir. 1993) (citation omitted).

But, the nonmoving party's bare allegations, standing alone, are insufficient
to create a material issue of fact and defeat a motion for summary judgment.
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986).  Conclusory allegations unsupported by specific
acts will not prevent an award of summary judgment; the plaintiff cannot
rest on his allegations to get to a jury without any significant probative

evidence tending to support the complaint. *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is proper. *Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Further, it is not the function of the Court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992). Therefore, "[a]lthough we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (quoting *Rushing v. Kan. City S. R.R. Co.*, 185 F.3d 496, 505 (5th Cir. 1999)).

*Joe Hand Promotions v. Del-Mar Lanes,* Civ.No. H-20-466, 2021 U.S. Dist. LEXIS 165985 *4-5 (S.D. Tex. May 7, 2021).

## ARGUMENT WITH APPLICABLE FACTS

"Section 201(a) of the Copyright Act provides that '[c]opyright in a work protected under this title vests initially in the author or authors of the work.'" *Di Angelo Publications,* Doc. 26 at p.7; 9 F.4th 256 at ___, 2021 U.S. App. LEXIS at *8; citing 17 U.S.C. § 201. The Copyright Act does not, however, explicitly define "author." Neither does the Contract pursuant to which Di Angelo prepared and published the Book in suit. Also, the Contract terms do not deal with the Update to the Book. *Di Angelo Publications,* Doc. 26 at p.12; 9 F.4th at ___, 2021 U.S. LEXIS at *13.

4

### The Use of the Term "Author" in the Contract is Not Determinative of Authorship for Copyright

With respect to the meaning of "author" at bar, the Fifth Circuit has said:

> Put simply, neither the Contract's use of 'author' nor its more general terms preclude Di Angelo from adducing facts that would make it a statutory author for purposes of 17 U.S.C. § 201(a). The Contract does not define author, and the word's common meaning can apply to multiple parties who collaboratively engage in producing one creative work, a possibility expressly contemplated by copyright law. And contrary to Kelley's suggestion, the terms of the Contract lend some support to the notion that the Book would be produced collaboratively.

> In addition to traditional editing, proofing, and distribution services, the Contract specifies that Kelley paid Di Angelo for services described as "manuscript development" and "elaboration on [the]base manuscript." The Book is no tome, but at 124 pages, it grew considerably from the three page manuscript Kelley originally submitted. On this limited record, it is plausible to infer that the manuscript's transformation into a book of sorts is attributable, at least partially, to the "development" and "elaboration" services expressly provided for in the Contract. In this sense, the Contract itself permits the inference that the parties' envisioned Di Angelo making substantive contributions to the work.

*Di Angelo Publications,* Doc 26, at pp. 10-11; 9 F.4[th] 256 at ___, 2021 U.S. App.

LEXIS at *11-12.

### Di Angelo Collaborated with Kelly on Content of the Book & its Update

As is common for business persons such as Kelley for whom Di Angelo

often creates books, Kelley did not provide Di Angelo a manuscript for the book

prior to entering into the Contract with Di Angelo for the book. Kelly Depo., Exh.

3, at: 37: 21-24; 152:3-4; Verified Statement of Sequoia Schmidt of Feb. 27, 2022,

Exhibit 4, ¶¶ 3, 8; Schmidt Decln, Exh. 2, ¶¶14, 15, 17; Declaration of Elizabeth A.

Zinn at Exhibit 5, ¶ 12.

After Kelley provided the three page initial "manuscript" to Di Angelo that the Fifth Circuit referenced in the quote above, [copy attached hereto at Exh. 3, Kelly Depo., Exh. 3 at depo. exhibit 5 thereto (and also attached to Complaint, Doc. 1-2 & Amended Complaint, Doc. 51-2)], which Kelley called her "basic outline" in her deposition, [Kelley Depo, Exh. 3 at 124:11-152:7], <u>Di Angelo collaborated extensively with Kelley in planning, writing, editing, and illustrating the Book, and its Update, as explained in the Exhibits attached hereto</u>: Schmidt Verified Statement, Exh. 4, ¶¶ 3-8; Schmidt Decln, Exh. 2, ¶¶17-22, 27, 37-40; Declaration of Michael Damante at Exhibit 6, ¶¶ 5-7; Declaration of Christopher A. Perez at Exhibit 7, ¶¶ 3, 6-12; and additionally for the Update, Zinn Decln at Exh. 5, ¶¶ 8-13. All of these declarants are available for trial testimony in Houston, Texas.

Kelley has admitted that she received "video, editing, manuscript development, e-publishing, print on demand" set forth in the Contract with Di Angelo as part of the "publishing package." Kelley Depo., Exh. 3 at 120:10-121:15. In this admission, Kelley said she wasn't "100-percent sure what "manuscript development" meant but she thought it meant "the layout." Kelley Depo., Exh. 3 at :121: 7-9.

Kelley testified in her deposition that the layout artist for the Book was

"Chris Perez."  With respect to his work on the Book, Kelley testified in her

deposition as follows:

> Q:   Did you work directly with the layout artists of the [B]ook?
> A:   Most of it was indirect, but some of it was, like, the exchange of photos through WeTransfer.  But most of it, he would send to Sequoia [Schmidt] and Sequoia would then send it to me.
> Q:   Okay.  I see.  And then you would review it and decide if it had been done ---
> A:   And make changes ---
> Q:   --- to your satisfaction?
> A:   Yeah.  And make changes as needed.
> Q.   Did the layout artist contribute any ideas?
> A.   Well, he's the layout artist, so I would say artists have ideas. Yes.
> Q.   So it wasn't just a matter of you telling him everything to do?
> A.   I – I gave him a lot of guidance and I had laid out where all the pictures go within the [B]ook and provided him the photos.

Kelley Depo., Exh. 3 at 159:15-160:10.

With respect to the Update of the Book, Kelley testified that Elizabeth Zinn

had worked on the Update but she didn't know how many editors had worked on

the Update.  Kelley Depo, Exh. 3 at 49:4-50:14, 82:21-24; 152: 22-25.  Kelley said

the Update was not a rewrite of the Book but "just updates to photographs and

some language inside the book, and some mistakes that were overlooked by the

editors in Book 1…." Kelley Depo, Exh. 3 at 153:5-9.  Christopher Perez worked

on both the Book and its Update.  Declaration of Christopher A. Perez, Exh. 7.

Kelley has admitted that Di Angelo had editors "review and make

corrections" to Kelley's alleged writing, Kelley Depo., Exh. 3 at 87:9-14; also see

Kelley Depo., Exh. 3 at 93:2-4.  And Kelley testified that "most of her

communication was through Sequoia [Schmidt].[3]"  Kelley Depo., Exh. 3 at 51:8-9.

However, when asked whether she and Sequoia Schmidt ever worked on the

Book together, Kelley essentially refused to answer, testifying in her deposition as

follows:

> Q.     Did you and Sequoia ever work on the [B]ook together?
> A.     Did we ever what?
> Q.     Work on the [B]ook together.
>        MR. ALONSO:  Objection. Vague and general.
>        THE WITNESS:  Yeah.  Be more specific on that one.  She was
>        the publisher, yes.
> Q.     (BY MS. TRIPP)  What did she do on the book?
> A.     As far as writing the book?  I, 100 percent, wrote the book myself.
>                                 . . .
> Q.     Did you ever ask Sequoia Schmidt any questions about what the book
>        should look like or contain?
>        MR. ALONSO:  Objection.  Too vague and general.
>        THE WITNESS:  Yeah.  Be more specific on that.
> Q.     (BY MS. TRIPP)  Did you ever ask Sequoia Schmidt any questions
>        while you were writing the book?
>        MR. ALONSO:  Objection.
>        THE WITNESS:  I think that was the same ---
>        MR. ALONSO:  More vague and general.
>        THE WITNESS:   --question again.  Can you be more specific?
> Q.     (BY MS. TRIPP)   Did you ever ask Sequoia Schmidt any questions
>        about book content?
>        MR. ALONSO:  Objection.  Too vague and general, indefinite as to
>        time.
> Q.     (BY MS. TRIPP)   While you were writing the book.
>        MR. ALONSO:  Same objection.
>        THE WITNESS:   The question sounds the same, all five times it's

---

[3] Sequoia Schmidt is the founder and principal of Di Angelo, and was a personal
friend of Kelley at the time Di Angelo prepared and published the Book and
prepared the Update to the Book. Schmidt Decln, Exh. 2, at ¶¶ 3, 13; Schmidt
Verified Statement, Exh. 4, ¶¶ 2, 3; Zinn Decln, Exh. 5, ¶ 10; Kelley Depo., Exh.
3, 40:4-17.

been asked.

Q.     (By MS. TRIPP)  Well, tell me about your writing the book.
       MR. ALONSO:  Objection.  Too vague and general.

Kelley Depo., Exh. 3, 41:17-42:2, 42:21-43:20.

### Kelley Has Not Corroborated Her Sole Authorship Claim

Kelley testified in her deposition that she wrote the entire Book on her phone with an app called "Write a Book" that she claims she found "on Google."  Kelly Depo., Exh. 3 at 43:24-44:13; 46:2-14.  During the deposition, undersigned counsel requested "the electronic records of the app and all the writing [of the Book on it] … be produced for electronic computer verification."  Kelley Depo., Exh. 3 at 44: 14-17.  Kelley's counsel Yocel Alonso objected to the request, Kelley Depo., Exh. 3 at 44:18-45:20.

Undersigned counsel for Plaintiff followed up with a request under Rules 26 and 34, Fed. R. Civ. P., for the app Kelley testified she used, a receipt for her purchase of the app, and all metadata for Kelley's alleged manuscripts or portions thereof for the Book with documents sufficient to associate the metadata to the particular manuscripts. [4]  A copy of this request and Kelley's response is at Exhibit 8, ¶¶1&2.  Kelley never produced the requested app, metadata, or any other

---

[4] Undersigned counsel sent the Rule 34 discovery requests to Kelley's counsel via email (and also via U.S. Express Priority Mail since Kelley's counsel refused to accept service via email) on January 24, 2022.  Kelley's counsel tardily provided an email response the day after Discovery closed, on March 1, 2022, stating he had mailed the "responses" (still tardily) on February 28, 2022.

objective or third party corroboration of Kelly's testimony.

In the deposition, Kelly testified her employees or contractors had not ever helped her with the app for writing the [B]ook and that she could not think of a specific time any of them had ever seen her working on the [Book.]  But Kelley testified that "everyone knew" she was working on a book because she had posted on social media to have her clients help come up with a name for the Book.  Kelley Depo., Exh. 3 at 46:12-47:17.

Kelley affirmed that she did a "rolling kind of draft" where she did a part and then another part of the book and sent it to Di Angelo in pieces.  Kelley Depo., Exh. 3, 122:8-123:18.  And Kelley affirmed that she and the Di Angelo editors went "back-and-forth" in their review and edits of the Book.  Kelley Depo., Exh. 3, 123:16-18; 124:5-10.

## Kelley Misunderstands Authorship for Copyright Purposes

Kelley claims she believes that she, and only she, "wrote" the Book and she repeatedly says so in her deposition, whether or not that statement was directly responsive to the question asked.  However, Kelley's understanding of an "author" for purposes of copyright is misguided.  For example, Kelley testified in her deposition as follows:

> Q.   So if I have two people and they sit down together and they discuss content of a book, what should be put in it, how they should say it, the general ideas, and then flesh out those ideas and they do that together as a collaboration, would they both be authors?

A.    No.

MR. ALONSO:  Objection.  Too vague and general.

THE WITNESS:  No.

Q.    (BY MS. TRIPP)   So which one would be the author?

A.    The one who writes the words in the book would be the author.

Q.    So to you, the one who does the typing of the words?

A.    There is many people involved in the creation of the book.  There is editors; there is layout.  I would not consider them authors for collaborating on the book.  I am the author; I wrote the words.

Q.    I'm trying to understand.  Okay.  I just want  -- I want to understand what you  -- what you -- I want to understand you, what you --

A.    Okay.

Q.     -- are saying, so – Okay.  How is it – This is – I don't mean this to be a trick question.  Okay?  So if you don't understand it, I'll try to clarify it.

A.    Okay.

Q.    But if the author is the one who writes the words and the editor, in reviewing the work, writes words and writes maybe a lot of words, a chapter or more – I don't know; maybe, say, they write words, write many words – are they then the author, too?

MR. ALONSO:  Objection.  Too general, calls for speculation.

THE WITNESS:  I don't believe.  Someone reviewing and making grammatical corrections, I would not consider that an author.  I consider than an editor.

Q.    (BY MS. TRIPP)  Okay.  And if they write substantive content, does that make them an author?

A.    It makes them an editor.

MR. ALONSO:  Objection.  Too general, calls for speculation.

THE WITNESS:  That makes them an editor.  That's the job of an editor.  It does not make them an author of my book.

Q.    (BY MS. TRIPP):  Do you think that happened in this case?

A.    I know there were some grammatical changes and I know there were some that were overlooked, but we did have editors review the book.  They were not the authors.  This is my work; there was no ghost write; there was no agreement for that; I wrote this book.

Kelley Depo, Exh. 3 at 116:8 – 118:10.

Kelley's focus is only on her initial writing—her outline, her notes, her

11

"words" allegedly stored in her phone app which she allegedly gave to Di Angelo for the Book and its Update.  And the Fifth Circuit has stated that persons "are entitled to copyright protection even if they do not perform with their own hands the mechanical tasks of putting the material into the form distributed to the public." *Lakedreams v. Taylor,* 932 F.2d 1103, 1108 (5th Cir. 1991), citing *Andrien v. Southern Ocean Chamber of Commerce,* 927 F.2d 132, 135 (3d Cir. 1991).

However, at bar, Di Angelo did both.  That is, Di Angelo's principal and its employees and contractors performed their creative work deserving of copyright protection orally and in fixed draft format exchanges with Kelley, as well as with "their own hands that put the material into its final form distributed to the public" (or ready for printing to be distributed to the public).  *See id.* Di Angelo's principal Sequoia Schmidt spent many hours collaborating with Kelly on content of the Book and its Update and on developing that content.  Schmidt Decln, Exh 2, ¶¶17-18, 22, 28, 40, 41; Schmidt Verified Statement, Exh. 4, ¶¶ 3, 4.  And Di Angelo's editors and layout artist spent many hours developing content and editing and laying out the Book and its Update.  Schmidt Decln, Exh 2, 19-22, 28, 38, 39, 41; Schmidt Verified Statement, Exh. 4, ¶¶ 4, 6, 7, 8, 15, 16; Damante Decln, Exh.,6, ¶¶ 5-7; Perez Decln, Exh. 7, ¶¶3, 6-14; and additionally for the Update, Zinn Decln, Exh. 5, ¶¶ 8-13.

One legal commentator, Law Professor Russ VerSteeg, of the New England

School of Law, has explained that while the Copyright Act does not provide a definition of author directly, it provides "the right questions to ask to answer the riddle." Russ VerSteeg, "Defining 'Author' For Purposes Of Copyright," 45 Amer. Univ. L. Rev. 1323, 1365 (1996), available online at:

*https://digitalcommons.wcl.american.edu/cgi/viewcontent.cgi?referer=&httpsredir*

*=1&article=1447&context=aulr*. Professor VerSteeg states that

> To ascertain whether someone is an author, we must ask whether he has communicated original expression, either directly (through personal fixation) or indirectly (through authorizing another to fix it.). That is what makes someone a copyright author.

*Id.* In more detail, Professor VerSteeg states:

> [U]nder §§ 101, 102(a), and 102(b) of the [Copyright] Act, an author is the person who either fixes or authorizes fixation of an original *expression:* something that is not an idea, procedure, or method barred by the prohibition in § 102(b). Hence, an author communicates his original expression, either directly or indirectly. In order to be a copyright author; therefore, one must meet three criteria: (1) the putative author must communicate something that is original; (2) that original something communicated must be expression; and (3) the putative author must communicate that original expression (a) directly himself through the act of fixation or (b) indirectly by authorizing another to fix it.

45 Amer. Univ. L. Rev. at 1342.

In this manner, considering Kelley's deposition testimony and lack of corroborating evidence to her claim of sole authorship, and considering the declarations of Di Angelo's representatives and the work product from Di Angelo's work in light of Kelley's original transcript or "outline," no reasonable

13

juror could find Kelly the sole author of the Book or its Update.

**Evidence Supports Joint Authorship and Joint Ownership of Copyright**

Section 201(a) provides that: "The authors of a joint work are co-owners of a copyright in the work." 17 U.S.C. § 201(a). Section 101 of the Copyright Act defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. §101.

The Fifth Circuit indicated in *Di Angelo Publications* that Di Angelo's "communicating and/or collaborating with Kelley" in writing and illustrating the Book would state a co-authorship claim at a minimum and a cognizable copyright claim. *See* Doc. 26 at p. 9; 9 F.4[th] 256 at ___, 2021 U.S. App. LEXIS at *10. Di Angelo submits that its evidence discussed above now establishes these claims.

Further, no reasonable juror could question that Di Angelo and Kelley both intended that their contributions be merged into inseparable or interdependent parts of a unitary whole to constitute the Book. *See* Contract at Kelley Depo., Exh. 3 at depo. exhibit 4 (and also at Doc. 1-1 and Doc. 51-1). The work in which Di Angelo was engaged (and provided) was for preparation and publication of the Book. Later, Kelley requested and Di Angelo provided the Update. The declarations and testimony of the parties show they both intended the work of Di Angelo and Kelley to initially constitute the Book and later its Update to replace

the Book.  *See* Schmidt Verified Statement, Exh. 4 at ¶¶4, 9, 15, 16 and Kelly;

Zinn Decln, Exh. 5 at ¶¶ 9, 12, 13; Kelley Depo, Exh 3 at 49: 4-11.

## CONCLUSION

A function of Copyright law is to protect authors from losing their

compensation for their works through unfair taking by others.  At the time the

Book in suit was first published, Kelley admitted she would not have had it without

Di Angelo.  And Kelley was so satisfied she later asked Di Angelo to prepare an

update to the Book.  Now Kelley claims she did it all herself.  Memories fade.

Only Di Angelo has provided corroboration of authorship, and Di Angelo

includes Kelley's contribution as a joint author.  This Court is asked to grant this

Motion and find that Di Angelo and Kelley are joint authors and joint copyright

owners of the Book and its Update in suit.  No reasonable juror could find Kelley

to be the sole author.

Dated:  March 28, 2022                                  Respectfully submitted,


                                                       /s/*Karen B. Tripp*
                                                       Karen B. Tripp, Attorney at Law
                                                       Texas State Bar No.:  03420850
                                                       Southern Dist. of Texas No. 2345
                                                       4265 San Felipe, Suite 1100
                                                       Houston, TX  77027
                                                       (713) 658-9323 office phone
                                                       (713) 968-9888 fax phone
                                                       tripp.karen@gmail.com
                                                       Attorney in Charge for Plaintiff
                                                       **Di Angelo Publications, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2022, I electronically transmitted the

attached documents to the Clerk's Office using the CM/ECF System for filing and

transmittal of a Notice of Electronic filing to the following CM/ECF registrant:

Yocel Alonso
Alonso, PLLC
130 Industrial Blvd., Suite 110
P.O. Box 45
Sugar Land, TX  77487-0045
(281) 240-1492
yocel@alonsolaw.com
Attorney for Defendant,
Jentry Kelley

/s/*Karen Tripp*
Karen B. Tripp